Greenland v. Harbor Freight, 15-1761 Counselor Bright, you've reserved five minutes of your time for rebuttal. Is that correct? Yes, Your Honor. Okay, you may proceed. So, good morning, and may it please the Court. I represent the plaintiff and appellant on this matter. This is a patent infringement case. We filed the case in Los Angeles, asked for a jury on all fact questions. One of those fact questions, of course, is the second half of an infringement analysis. The first half, of course, is the claim interpretation. The second half is the application of the claim properly construed to the accused product. That's a fact inquiry. In this case, my opponents filed a motion for summary judgment of non-infringement and invalidity. At the time of that motion, the court below hadn't done the claim interpretation exercise. So it was a little bit of a black hole for us. Nonetheless, we opposed, putting in our proposed definition of the term which turned out to be the fulcrum of the case, which is carriage assembly. And that's all in our brief. I don't want to repeat our brief particularly. But I want to point out that my opponent, in his moving papers, primarily was arguing that the claim had to be construed narrowly because of prosecution history estoppel. And he had a long argument about why that estoppel applied. The judge took all of that stuff into account and issued his ruling in which he defined carriage assembly. Now, he didn't go with our definition, and he didn't go with my opponent's definition either. It was kind of closer to mine than the other guys, but pretty close to my definition. The point about that is, though, that my declaration in opposition, my inventor's declaration, relied on our own proposed definition. So you could say in a way that our papers did not expressly address the definition that the court provided after the fact. But nonetheless, the moving papers had only one piece of evidence, the declaration of a man named Sprong. Mr. Sprong didn't say in his declaration any particular qualifications to address the issue of infringement. He didn't say that he'd ever built, designed, modified, or otherwise fixed any machine, let alone machine at issue. He's just a guy who worked for the company, probably a good guy. But he doesn't offer any qualifications to say anything other than what he says, which is that here's a picture of the product attached to my declaration, and it shows the meals. And that's about all he said. What's important here is that he didn't deny, he didn't say that there's some element of the claim missing from our product. His declaration doesn't say that. So there's no fact put forward on the moving papers that says there's a missing element. Meaning there's no evidence on the fact question of whether all elements are present in the accused product. So we opposed, I put in the declaration of my inventor, to which was attached images that he'd made of the accused product. He'd acquired a sample of it, took pictures of it, and then he identified in his declaration where each element is to be found. I thought to myself, that's a prima facie case of literal infringement. And the most the other side could say is, well, I disagree that one of the elements of the claim that the inventor identifies as satisfying such and such can be found here. But all that would do is create a fact issue. But the point is, at the time I filed my opposition, there wasn't even a conflict over that issue. Because the moving papers had no evidence that any element was absent. Okay, so then the judge in his order defines carriage assembly, and he says, the accused product has a carriage. I find that as a fact. Now, he doesn't say I find that as a fact because the inventor, Mr. Greenland, says there's a carriage. But it's more than a coincidence that we identify as a carriage the same thing he identifies as a carriage. Then he goes on to say, but there's no assembly here. I find there's no assembly. That's a fact finding, contrary to the declaration and the supporting images from my client. So what the judge did was he set himself up as the jury in this case. Because if you look at his ruling, he doesn't cite to Mr. Sprong's declaration or anything. This is his seat-of-the-pants determination of a fact question that I wanted submitted to a jury and still do. So then my opponents file a reply, which goes back to their argument about prosecution history estoppel. It includes a supplementary declaration from Mr. Sprong saying, well, if my declaration doesn't say it, it certainly implies that so-and-so and so-and-so. It's something written by only a lawyer can think that up. It still doesn't say that there's some element absent. But even if it did, all I would do is create a fact question. So we're relying here on the Amdocs case decided in this court in 2014. There's a similar case. The claim interpretation was done. The patentee submitted a declaration showing how each element of the claims properly construed by the court was present in the accused system. And the trial court said, I don't see any evidence here, just like my judge said. I don't see any evidence here that all elements are present. So you're out of court. Now, we recognize, we're the plaintiff. It's our burden to prove infringement by our proponents. And the declaration of the inventor meets that requirement. Now, on the motion for summary judgment, I don't have to win the case. All I have to do is show that a reasonable group of jurors could find infringement. I think we got to that. I think we proved it up because my opponent didn't disprove anything. But I think we at least showed through the declaration of Mr. Green and the attached images and goes to the discussion, points to each element, that we have enough that a reasonable jury could find infringement here. And that's all I had to do on this motion was to show that some reasonable group of people could find that each element was present. At bottom, your argument is that wheels on the table are a carriage assembly. My argument is that the court found, Your Honor, the court found that the wheels are the carriage. So I'm not arguing that point. I'm saying, okay, let's treat that as a law case. Wheels on the table. Sorry? Wheels on the table. The wheels that are underneath the table, on the frame underneath the table, he said, are the carriage. He said what's absent is the assembly. And I said, my inventor says in his declaration. But isn't that the very same elements that you disavowed in prosecution? No, that's the point we made in our papers to the judge. Remember on the moving papers in the motion for summary judgment, the other side, their papers are almost all about prosecution history estoppel. The judge didn't adopt it because there was no clear disavowal of that construction. In order for prosecution history estoppel to apply, there has to be a clear give back or give away of that coverage. Help me with something. Let me come at this a different way because I have the same question as Judge Rayner. But if you look at Sigatich, which is one of the prior art references, how, in your view, I see a table with wheels underneath the table and the table moves along the frame. How is that different in your view from the accused device? To be honest with you, from Sigatich's disclosure, so sketchy, it's really difficult to tell whether Sigatich is. Sigatich certainly has wheels that roll along. Right. And your argument is the wheels are the carriage assembly. No, the wheels are the carriage. The assembly is the structure that holds the wheel. Well, OK. That's the argument. But obviously, anytime you have wheels, you have to have structure that attaches the wheels. No, that's not true. A wheel could sit in a well. I've seen lots of devices where a wheel sits in a well with no axle at all. Without getting into strange structures, let's just agree. I think we can that Sigatich clearly has wheels and a wheel assembly that attaches the wheels to the table. Right. That's pretty clear. He does have wheels, yes. And the wheels attach to the table with some kind of assembly. Right. Yes. Right. So why is that not exactly what the accused device is? Because Sigatich doesn't have the other elements called out in our claim. Which are? So the fact that there's some commonality. Which are? For one thing, we have this table that extends beyond the frame. The way this device would work, my guy used to be a tile installer. Inventor. And he carried these saws around with him to install the tile. When you get to a job site, if the table is no bigger than this, let's say, 16, 18 inches on the side, you haven't got enough room to cut the tile pieces out of a template. Right. But just sticking to the potential prosecution history estoppel argument, prosecution disclaimer argument, Sigatich, I don't know if I'm pronouncing it right, discloses a table roller mounted on a frame. Sigatich does. Yeah. And then Mr. Greenland, in the response to the office action, said, Sigatich's table roller mounted on a frame lacks a carriage assembly. He said, if I may, Your Honor, I can't remember every word that was said in the prosecution history. But we went through all of that in our opening brief. I should say in our reply brief because my opponent didn't oppose by saying there's a fact question as to whether there's an assembly. He went back to the prosecution history estoppel. The point I tried to make at the get-go was that they made the same argument to the trial court in support of their claim interpretation argument. Right. The judge took it into account. But right now we're just trying to follow the logic of what happened in the prosecution history And why is it so when the applicant, in response to the office action, said that Sigatich lacks a carriage assembly, when Sigatich has this set of wheels to mount the table onto the frame, which very much seems like the accused product system of having a table roller mounted on a frame. So where's the daylight for you? The daylight is, if you may refer the court to my reply brief beginning at page 11. I go through the prosecution history estoppel arguments on pages 11, 12, and 13 of the reply brief. I didn't do it in my opening brief because I considered the matter settled by the court's order of claim interpretation, which took into account the prosecution history estoppel arguments made by my opponent. And you're into your rebuttal time, but go ahead and answer the questions and I'll restore some of your time. And I said, if you look at the bottom of 11, page 11, the last paragraph, we point out that in the patent office we argued that our claims call for direct mounting on a frame, and the prior article didn't do that. That was the distinction. The fact that there's some commonality is neither here nor there. There was still a patentable distinction from our point of view and from the patent office's point of view. But my opponents don't argue that their roller assembly isn't directly mounted. Then they would have a prosecution history estoppel argument, but not because of the wheels and carriage assembly. Because the argument made in the patent office for patentability was that our product has a directly mounted carriage assembly, and the prior art does not. Directly mounted on the frame. Yes, sir. That's on page 11. And continuing to page 12, where we deal with the prosecution history estoppel argument raised by my opponent on the other patent, which had to do, where there the prior article was a heart carotid. And Sigatich's wheels are not directly mounted on the frame? That's right. Why are they not directly mounted on the frame and yours are? Because they look very similar. It's just the way it's made, that's all. Well, but how are they differently made? I don't know about how they're made, Your Honor. I don't have any idea. No, no, no. I can only tell you. Let me, I'm not making myself clear. As far as I can see, looking at the diagrams in your patent and Sigatich, it looks like the wheels are mounted on the frame assembly in the same manner in both. And if they're not, explain to me how they differ in the way they are mounted to the frame. I can't tell you without going back and re-reading the Sigatich thing. Well, I can show you the reference. Which is a JA 384. I know that, but I still can't. I'd have to sit and think about it for 10 minutes or so without being able to tell you. Without looking, I can't tell you. All I can tell you is that the prosecution history of stop argument normally turns on the idea that in the patent office I entered a limitation to the claim or made an argument or both for a certain element or group of elements in the claim. And then I, so there I give back some coverage. I narrow the scope of my claim. That's a prosecution history of stop all classically opposed. And we, in getting the patent allowed, Greenland said, our product is directly mounted. Sigatich isn't. The patent office said, I agree. Your claim calls out direct mounting, so it articulates the distinction over the prior article. Now, if my opponent were to say to you, our product is directly mounted and therefore is within the scope of what you gave up, okay, that's a prosecution history of stop argument. But they don't make that argument. That's all I'm saying to you. I'd have to go back and look at Sigatich, Your Honor, to tell you all the differences. But I didn't want to confuse how the patent claim was allowed, which is a prosecution history of stop question. What did we argue to get it allowed? This direct mounting issue. That's what we argued. If they said, we, our product has the feature that you disclaimed, okay, that's prosecution history of stop all, and that gets them out for infringement. But the judge didn't buy their argument. If you look at his order, he doesn't adopt their prosecution history of stop all arguments. I think we got it. Let's hear from Mr. Rosenberg. Remember, I have the evidence. I have a declaration. They have nothing in the way of evidence. Just a lawyer argument about prosecution history of stop all, which the court rejected. Good morning. May it please the court. Before I address my main argument, I'd just like to turn to something that my opponent was briefly discussing. Actually, more than briefly discussing in length. It's the appellant's distinguishing of Sigatich. Most of my opponent's entire argument was focused on the wrong patent that was cited in the prosecution history. My opponent's argument was directed to the appellant's distinguishing of Hair Curlote in connection with the prosecution of the 041 patent. That distinguishing had to do with the direct mounting. The distinguishing of Sigatich in the prosecution of the 990 patent had nothing to do with the direct mounting. In Sigatich, the examiner specifically found that the- I'm sorry. This is in the second prosecution. Correct. The request for reconsideration, for example, at 394, is that where you're looking? Yes. 395, yeah. There was two patents, the 041. Right. And Hair Curlote was cited in connection with the prosecution of that patent. Right. And the 990. And Sigatich was cited in connection with that. Sigatich, as the court has already stated, showed a table with wheels that rolls on a rail. And the wheels are attached to the underside of the table, just like the accused product. The examiner stated that the application for the 990 patent shows- I'm sorry. That Sigatich discloses a saw with a frame. The saw includes a roller-mounted carriage assembly. And in response to that, the appellant, the applicant, stated that what Sigatich discloses is a table rollingly supported on rail members by means of four steel rollers. But the application, the applicant's invention, has an additional element, the carriage assembly. In other words, the appellant- What page are you- That is page 394 of the record, where it's referring to the patent. And more specifically, it's probably midway down. And in the last sentence of that page, in contradistinction, the rejected claims 1 through 12 each call for an element not found in the cited reference. And on the next page, 395, repeatedly in the first two paragraphs, the appellant states what is called for in the invention is a carriage assembly. So a table with rollers that rolls on rails is not a carriage assembly. That is something entirely different. And again, the direct mounting has nothing to do with the distinguishing of Sigatich for the invention called in the 990 patent. The district court's claim construction was entirely proper. It is fully supported by the specifications of the 041 and 990 patents, as well as the prosecution histories of those patents. Both specifications describe a carriage assembly that is a separately movable structure made of manufactured parts that moves on a frame and supports some other movable object, namely the table. In other words, the asserted patents both describe a portable saw with two movable structures, the carriage assembly, which moves relative to the frame, and the table, which moves relative to the carriage assembly. The district courts provide a support in the intrinsic evidence for its construction, specifically citing to the cited carriage assembly depicted in Figure 6 of the 041 patent, which shows an assembly consisting of at least two parts attached to the frame and mounted under the table. And the court's construction comports with the fact that both patents, again, show two separate moving parts, the carriage assembly, which moves relative to the frame, and the table, which moves relative to the carriage assembly. It struck me, and correct me if I'm misreading this, but it struck me that most of the claims do seem to contemplate two different moving assemblies, the carriage assembly and the table. Both move. But I thought that Claim 9 of the 990 seems not to contain the requirement that the table move. It does require that the free-roller-supported carriage assembly, presumably free-roller-supported means that it's rolling. That suggests movement, but the table doesn't seem to be required to move. Am I not reading that accurately? Claim 9 of 990. I mean, if the carriage assembly is attached to the table and the table doesn't move vis-à-vis the carriage assembly, then the table can be moved to different places, but only by moving the carriage assembly. That was my reading of the claim. Is that an incorrect reading? I believe it is, Your Honor. It's a free-roller-supported carriage assembly, and the carriage assembly is also roller-mounted, so it's two sets of rollers. Where do you get the second set of rollers? If you say free-roller-supported carriage assembly, that's one set of rollers. Where's the second set of rollers? You're right, Your Honor, in terms of that. But it goes back then to the claim construction. What is a carriage assembly? And the carriage assembly, and it goes back to— Well, we know the carriage assembly has to roll, but my question is doesn't this claim entail, or at least contemplate, a table that may not move vis-à-vis the carriage assembly? It's just attached to the carriage assembly. Now, maybe that reads on the prior art, but— I believe it does read on the prior art. But is that what the claim is properly construed to mean? It can't be construed to mean that, because a claim has to be construed to be valid. And you read it that way with just the wheels moving on a rail. That's sigatech. Yeah. And that's why it goes back to— there has to be something more than just the wheels under the table because— Although sigatech does not involve, as Mr. Bright said, the table extending beyond the frame. That's correct, but in distinguishing sigatech, that's not what— I understand. That's not what the appellant focused on. I understand, but the argument that the claim can't mean what it seems to mean because it would be invalidated by sigatech fails if, in fact, the claim involves pushing the table beyond the frame. Correct, but throughout the specification of this patent, it specifically shows that there's two different moving parts that move relative to each other. I guess another question is could carriage assembly in Claim 9 be defined differently than carriage assembly in Claim 11 or Claim 12? I don't believe so. First, it goes back to sigatech, and you have to take that into account. And the plaintiff has never—the appellant has never claimed that, and there's no support anywhere in the specification of prosecution history that there's a different meaning in terms of this claim. So it's our position that the district court properly construed the patent, both patents, to include that both parts need to be moving separately, both the table and the carriage assembly. Moreover, in terms of the infringement aspect of this, is that nowhere in any patent does any embodiment— There's not a single embodiment. There's not a single description. There's not a single figure which shows that the wheels can be the carriage assembly. In particular, the 041 patent provides absolutely no support. The court ruled, though, that carriage assembly included wheels. It did not exclude wheels. But it can't be just wheels. And, in fact, the 041 patent provides no support for the carriage assembly being just the wheels. Well, when you say just the wheels, just so we're clear here, because there's been a dispute about what that wheels means, you're saying wheels and associated hardware to attach the wheels to whatever they're attached to. Correct. Okay. So when we use the term wheels, that's what we mean? Yes. Okay. First of all, that's, again, shown in SIGATEC, number one. Number two, the word wheels or rollers does not even appear in the 041 patent. And those words don't appear. It's not shown in any figure. So there's just absolutely no support in the 041 patent for the carriage assembly to be the wheels and the associated components. And the claim construction being proposed has to be used in both patents here. There's no argument from the appellant that in one patent it's construed one way and in the other patent it's construed another. But it doesn't work for me. It cannot work for the 041 patent. So it has to be more than just the wheels and the associated parts. And then the claims actually talk about how the carriage assembly is roller-mounted to the frame and the table is roller-mounted to the carriage assembly. Roller-mounted seems to suggest wheels, so it seems odd to say that the wheels themselves can be the carriage assembly when the wheels appear to be defining the mounting relationship between things like tables and carriage assemblies, carriage assemblies and frames. I agree, Your Honor. That's the 990 patent. In the 041 it's sliding rails. It's on rails, right? The 041 contemplates the sliding on rails essentially. And the carriage slides on rails and the table then telescopes beyond the frame using a telescoping assembly. Right. Going back to Judge Chen's comment that the wheels can't be the carriage assembly because otherwise you'd have a roller-mounted carriage assembly with a table roller-mounted on top of that. So there's two sets of wheels. So what's left here is wheels on wheels, which can't be. It just won't work. So the district court's claim construction is correct. The plaintiff's or the appellant's proposed construction just finds no support in the record, and the district court's claim construction is therefore entirely proper. With respect to non-infringement, what Mr. Sprong pointed out in both of his declarations is that there's nothing that comes between the table and the rails other than the wheels. And for the reasons I've discussed, wheels cannot be the carriage assembly. And the court found the exact same thing, that the wheels by themselves, including the components that make up the wheels and attach to the underside of the frame, are not and cannot be the carriage assembly. So simply put, the district court's non-infringement decision was entirely correct. Now, the appellant's central argument is that somehow the district court ignored the appellant's declaration. There's nothing in the record to suggest that this occurred. The district court used its construction of carriage assembly and properly found that the appellant's declaration, which was based on the appellant's incorrect claim construction, did not create an issue of material fact. Nowhere in the record did the judge say, I am not paying attention to the appellant's declaration. The appellant's declaration, as the appellant admits throughout its appeal papers, for example, at pages 4 and 10 on the opening brief and 2 and 3 on its reply brief, is entirely based on its incorrect proposed claim construction. The plaintiff's opinion, again, the plaintiff is a lay witness, and this is self-serving testimony, his non-infringement opinion is admittedly based on a proposed construction that is wrong. Because the construction is incorrect, the non-infringement opinion based on that construction is necessarily incorrect. Accordingly, the district court didn't credit the appellant's declaration was not erroneous because the declaration itself was erroneous. It's just self-serving testimony. I guess the declaration pointed to the wheels and the axles, right? Right. So in a sense, he was referring to more than one part and the parts being fitted together. But wheels and axles are inherent, and the fact that it's attached to the bottom, that's shown in Sigatech. All of this is shown in Sigatech, which goes back to what appellant is trying to capture is what it disclaimed in the prosecution of the 990 patent, that the wheels under the table and that right on rails cannot be a carriage assembly. That it's something different. And for these reasons, the court's claim construction and infringement determination were not erroneous, and therefore the judgment of the district court should therefore be affirmed. Thank you. Thank you, Your Honor. Mr. Brady, you have two minutes. First of all, opposing counsel said that the judge credited Mr. Greenland's declaration. I quote from JA-6, which is page 4 of the judge's order, right at the bottom. It says, Plaintiff has not offered any evidence indicating otherwise, meaning indicating that my analysis of assembly is wrong. No evidence. That's a gross overstatement because we turned in the Greenland declaration. And I would refer, Your Honors, to our reply brief where we re-quote at pages 3 and 4 the paragraphs of the Greenland declaration where it points out every single element. Second point, Judge Bryson had asked me in the opening and I didn't have the answer, but I do now. I mentioned pages 11, 12, and 13 when I go through there, my opponent's prosecution history estoppel argument. Beginning at the bottom of page 12, the last paragraph, and continuing to page 13 of my reply brief, Your Honor, this is a discussion of the Sigatich distinction made in the Patent Office. The distinction made was that Sigatich's carriage assembly 57, that's the number in the drawing of the Sigatich patent, is on the upper edges of the vertically extended flanges of the rail members and therefore isn't directly mounted on the frame. That's the argument that was successful in getting the patent allowed. It had nothing to do with disclaiming anything about carriage assembly. Nothing to do with it. And that's why the prosecution history estoppel doesn't help my opponent, and it's also why the trial court didn't give him any credit for it. It doesn't go anywhere. The wheels in Sigatich, then you say, are attached to the rail, not to the frame? It's on page 13, Your Honor, right at the top of my reply brief. Patentee argued only that Sigatich's carriage assembly 57 is on the upper edges of the vertically extended flanges of rail members so-and-so and therefore isn't directly mounted on the frame, which is what the claim explicitly calls for. Now, my opponent doesn't say ours isn't directly mounted. They concede theirs is directly mounted. So the prosecution history estoppel based on Sigatich doesn't help them one bit. My last point I want to come back to. Are you saying the rails in Sigatich are not part of the frame? I'm not saying that at all. I'm just quoting what the argument made to the patent office was. Well, I know you're quoting it, but I'm just trying to see if that makes any sense. I'm saying that it's directly mounted because to be directly mounted, it couldn't be on the top of the rail. That's all. It's like saying, if my hand touches the edge of this table, it's not directly mounted on the table. That's all. Now, maybe you don't like that argument today. Maybe you think if I was the patent examiner, I might have come to a different conclusion. But the point is that prosecution history estoppel is based on the written record, not what we imagine it might be or could have been or should have been. What about the statement at 8394 to 395 where the applicant is trying to convince the examiner that Sigitech doesn't anticipate the claims and the applicant keeps reciting claim language that repeatedly is talking about a carriage assembly and none of that claim language, at least, seems to be talking about directly mounting the carriage assembly to something? I don't think I understand your question. Oh, 8394 to 395. You don't have your appendix? I don't have them before me, Your Honor. But all I can tell you is maybe I can look at it. All I can tell you is that the part I quoted is from 394 and 395, which is where my patentee's lawyer made the argument that I just quoted. That's where he made the argument. That's the only argument he made. And the patent office accepted it. Would you like to conclude? One last point, Your Honor. The question here is extremely narrow. Where there's a jury demand and I want a jury to decide the facts, namely, does the claim properly construed cover the product? Did I give the trial court a declaration adequate to get to the jury? Yes. Did my opponent come forward with a declaration denying the presence of any claim element? No. Under those circumstances, I submit to you it should be reversed and remanded so I can get my day in court. I want a jury to decide this, not some judge on declarations. Thank you. We got it. That concludes today's arguments. This court stands on recess.